# Kouns v. Josselson Bros. et al.

(Decided November 14, 1930.)

HOWARD VAN ANTWERP, JR., for appellant.

WILSON & ROBINSON and MARTIN & SMITH for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Walter Kouns sought in the circuit court a review of the action of the Workmen's Compensation Board denying him compensation for injuries he had received in an accident. He was unsuccessful and he appeals.

On November 7, 1927, Kouns entered the employ· ment of Josselson Bros. He got his employment from Arthur B. Ferguson, the shipping clerk for Josselson Bros., so he says. Josselson Bros. were operating under the Workmen's Compensation Law with notices to that effect posted on the premises, and kept and had a register for their workmen to sign (form No. 4), by the signing of which they indicated their acceptance of the provisions of the Kentucky Workmen's Compensation Act, Chapter 33, Acts 1916, page 354, as amended, or chapter 137, Ky. Stats., being sections 4880 to 4987, inclusive. Kouns was first put to work driving a truck.

About noon on Saturday, November 19, 1927, Kouns was directed to don a Santa Claus uniform and to act as Santa Claus. Kouns did so. He was handing out advertising matter and tickets entitling the holder of the winning tickets to certain prizes to be given away on Christmas Eve, and he was giving away some small articles. He left the store and went to a taxi office some little distance from the store, and while in there his uniform was ignited from an open gas fire, and Kouns received very severe injuries. Ferguson visited him during his resulting illness, and this is taken from Ferguson's evidence about what occurred on one of those visits:

"Q. What was said about Workmen's Compensation then? A. I asked him, I believe, if he ever got anything, and he said 'no,' and I don't remember how it come around, but I asked him if he would like to sign it, and he said if he could get anything, he would, and then I asked him if it would be alright for me to sign his name, by me, and he said it would.

"Q. And you had no paper there with you? A. No, sir.

"Q. Did you tell him you would let him know whether you signed it or not? A. Yes, sir.

"Q. Where did you sign this Form 4? A. Down there at the store.

"Q. Did Mr. Josselson know that you had signed it? A. No, sir.

"Q. Did he know anything of the conversation between you and Walter that was had at the house? A. No, sir.

"Q. You never discussed anything with him about Walter getting compensation? A. Did not.

"Q. When a new man went to work for you Mr. Ferguson, did you make any inquiries as to whether or not he had signed the compensation register? A. I usually took them to Fugeman and had him sign them up.

"Q. That was your regular practice and custom—to take them to Fugeman and see that they signed the register? A. Yes, sir.

"Q. Did you take Walter Kouns up to him or not? A. No, sir.

"Q. Do you know why you didn't? A. I just overlooked it.

"Q. Just ovrlooked it? A. Yes, sir.

"Q. I suppose you didn't discover that until after Walter was burned? A. No, sir; I didn't.

"Q. It is your endeavor to get every man working for you to sign the register? A. Yes, sir.

"Q. I believe Mr. Josselson has told you to do that, has he not? A. Yes; and Fugeman has also told me to. Usually when he puts a man on the payroll, he finds out whether they have signed or not.

"Q. You don't make a practice of letting anyone work there for any length of time without signing the compensation register? A. No, sir.

"Q. You realize that it is dangerous—a dangerous practice to have men working there that hasn't signed an acceptance of the act? A. Yes, sir.

"Q. And you get them to sign as quick as you can? A. Yes, sir.

"Q. Unless you happen to overlook it as you did in this case? A. Yes, sir."

"Q. After you were up at Walter Kouns' home on this day you mentioned, and were talking to him about the compensation register, you did sign his name to the register, didn't you? A. By his direction; yes, sir.

"Q. You found this register in Josselson Brothers office, didn't you? A. Yes, sir.

"Q. And it was there every time you went in there? A. Yes, sir; I knew where they kept it.

"Q. Always kept there? A. Yes, sir.

"Q. And there was one kept there when Walter Kouns accepted employment there? A. Yes, sir."

Alex Josselson reported this accident to the Workmen's Compensation Board November 29, 1927, on form 7, and with it filed report of the physician attending Kouns made out on form 8. Josselson Bros. refused to take further steps or to do anything looking to a settlement or adjustment of the matter. February 18, 1928, Kouns filed with the board an application for adjustment of his claim made out on form 11. Josselson Bros. by answer resisted the claim of Kouns. Evidence was heard on June 12, 1928, at the outset of which the parties made this stipulation:

"*Stipulation*: It is stipulated and agreed by the parties hereto that Josselson Brothers, the defendant, elects to proceed under the Workmen's

Compensation Act as provided by law; that the claimant, Walter Kouns, was an employee of the defendant November 19th, 1927, that his actual average wage at that time was $20.00 per week; the only question involved is, whether or not at the time of said accident to the plaintiff herein, he had elected to accept the provisions of the Kentucky Workmen's Compensation Act as required by law, and whether, or not the accidental injuries alleged to have been received by the plaintiff arose out of and in the course of his employment, and, the question and extent of the disability.''

The evidence shows Kouns suffered third degree burns and is in a pitiable condition. This is taken from the evidence of Alex Josselson heard on that occasion:

''Q. It has been stated here by Kouns that A. B. Ferguson came to his home about a week after the injury and took up the matter with him of getting him to sign the compensation register—having him sign the compensation register for him, I will ask you to state whether he was acting for Josselson Brothers? A. He was not.

''Q. Was he acting under any authority conferred on him by Josselson Brothers? A. Was not.

''Q. I will ask you if you had any knowledge of that visit or the purpose of it? A. No, sir.'

''Q. Did you ever authorize Ferguson to procure the consent of Walter Kouns to sign the register, or put his name on it? A. No, sir.

''Q. I believe you stated that you didn't know anything about it until you heard afterwards that it had been procured that way? A. No, sir, I did not.

''Q. I believe, Mr. Josselson, as employer of Mr. Kouns, you have never made any payments of compensation to him or any medical services in connection with it? A. No, sir.

''Q. I see on February 21st, 1928, you filed Form No. 7 with the Workmen's Compensation Board reporting this injury. Under what circumstances was that filed? A. It was filed on your recommendation. You were consulted and you advised us to file it.

''Q. What was the reason for filing it? A. Well, to try to hold the insurance company liable in case anyone was liable.

"Q. Were you advised by your counsel to do that for that purpose? A. Yes, sir.

"Q. That's the reason, then, that this form 7 was filed with the Board? A. Yes, sir.

"Q. Have you ever made any compromise or agreement of any kind with Kouns or his counsel in connection with this mater? A. No, sir.

"Q. Have you ever assumed any responsibility whatever? A. No, sir.

"Q. How long was it after the accident until you saw Mr. Kouns? A. I saw Mr. Kouns as soon as it was reported to me that he was burned, I went up to his boarding house.

"Q. I will ask you if on that day, Mr. Kouns had any business for Josselson Brothers to be performed at this taxi-cab office on Fourteenth street where he was burned. A. No, sir.

"Q. State whether he was over there on business for Josslson Brothers? A. No, sir; was not.

"Q. Did you have any knowledge or information that he was going to this taxi-cab office? A. No, sir.

"Q. Did you know of his being there until after the accident? A. No. sir.

"Q. Mr. Kouns stated that part of his duties with this Santa Claus suit on was to go out and gather children off the street and bring them in the store? A. It was not.

"Q. Did you say anything to him about not going out on the street? A. Yes, sir.

"Q. Are you positive about that? A. Yes, sir.

"Q. Are you willing to swear that you told him not to leave the premises? A. Yes, sir."

On March 5, 1929, the board made this order:

"The claim having been submitted to the Workmen's Compensation Board for trial and award upon the pleadings, proof, exhibits and record herein, and the Board having considered same and being sufficiently advised, finds, orders and adjudges that the said Walter Kouns suffered a personal injury by accident on November 19th, 1927, while employed by and working for the defendant, and that the average weekly wage of said claimant at said time and date was $20.00 per week, and that said accident arose out of and in the course of his employment,

but at the time of said accident the said claimant failed to obey lawful and reasonable rules, orders and regulations of the employer and any compensation to which he would be entitled would be subject to the penalty of 15% decrease in the amount of each payment.

"It is further ordered and adjudged by the Board that the application for adjustment of claim filed herein by the claimant be and the same is hereby dismissed, because the said employee at the time and date of said personal injury by accident arising out of and in the course of his employment had not elected to accept the provisions of the Kentucky Workmen's Compensation Act."

Whether this was the order of a single member or of the full board does not appear. When he took up his next step does not appear, but thereafter he filed with the board a motion for review as follows:

"a. Claimant wishes to ask the Board to extend the opinion and final order herein, and his opportunity to do this would be terminated before the next meeting of the Board, unless this motion for review be filed.

"b. The sole purpose of this motion is to ask the Board to extend its opinion in this case and to more fully set out the reasons for dismissal of the application.

"c. It is the understanding of counsel for claimant that the Board's construction of the decision of the Court of Appeals in Junior Oil Co. v. Byrd, 204 Ky. 375, 264 S. W. 846, is that after the injury there must be (1) an acceptance of the terms of the Act by the injured employee (the employer of course operating under the Act) and (2d) an agreement on Form No. 9 as to payment of compensation, and approval thereof by the Board and (3) payment and acceptance of compensation. That to make this case a compensable one, 1, 2, and 3 must be shown, but 2 and 3 did not appear and therefore there was no election and the claim was dismissed.

"d. To squarely present the issue above claimant would ask the Board to amend and extend its opinion by making the necessary finding of fact and rulings of law."

On May 7, 1929, the board made this order:

"This claim is before the Board on plaintiff's motion for extension of the order and award of March 5th, 1929.

"The case of Junior Oil Company et al. v. Byrd, 204 Ky. 375, 264 S. W. 846, is not applicable or controlling in the case under consideration. In the case supra, the Court held that the employer and insurer were estopped to deny that employee had not accepted the provisions of the Act. The facts in that case showed that the Junior Oil Company had elected to operate under the Workmen's Compensation Act as required by law on and prior to January 30th, 1922, the date J. R. Byrd was injured while working for that company. At that time the injured employee had not elected to accept the provisions of the Act but afterwards signed the register evidencing his acceptance so that his claim for compensation might be adjusted under the Workmen's Compensation Act. The Maryland Casualty Co., insurance carrier for Junior Oil Company, then entered into an agreement with the injured employee on the Board's form No. 9 providing for payment of compensation to him for the injuries sustained on January 30th, 1922. This agreement was filed with and approved by the Board and thereby became an award of the Board. Section 48 of the act (Ky. Stats., sec. 4931). Wallins Creek Collieries Co. v. Jones, 214 Ky. 776, 283 S. W. 1067."

"In the case under consideration Josselson Brothers had elected to operate under the Act on and prior to November 19th, 1927, at which time Walter Kouns who was employed by and working for Josselson Brothers received the injuries for which compensation was claimed. At the time of said accidental injury Walter Kouns had not elected to accept the provisions of the Act. After the accident his name was signed to the register by A. B. Ferguson foreman of the shipping department of Josselson Bros. with his permission, knowledge and consent. We think the acceptance in this manner was a substantial compliance with the requirements of the Act and would afford Walter Kouns the protection of the act, if he had suffered a personal injury by accident after the date his name was affixed to the register. This acceptance after the accident

386

would have been sufficient under the doctrine announced in the Junior Oil Company v. Byrd case, if the employer or insurance carrier had entered into an agreement providing for the payment of compensation for the injuries resulting from said accidental injury or had made voluntary payments of compensation to Walter Kouns.

"The undisputed testimony shows that Josselson Brothers repudiated this acceptance by the injured employee after the accident because they failed and refused to enter into an agreement in settlement of his claim or to pay any compensation to him. This being true we reach the conclusion that the act of injured employee can only be given a prospective effect. We cannot give it a retroactive effect and award compensation for disability resulting from an accident which occurred prior to the date he accepted the provisions of the Act as an employee of Josselson Brothers. The claimant cannot rely upon the plea of estoppel because nothing was done by the employer to warrant such a defense.

"The Board upon consideration of the record, finds, orders and adjudges that said award or order in this case be reviewed by the full board, and said record having been reviewed and considered by the full Board it is now ordered and adjudged by the full Board that the order of March 5th, 1929, be and the same is hereby approved and sustained."

Upon petition for review in the circuit court, the action of the Workmen's Compensation Board was sustained and approved, and Kouns has appealed.

The judgment of the circuit court is correct. Acceptance of the Workmen's Compensation Act by either an employer or an employee is a voluntary matter.

In Greene v. Caldwell, 170 Ky. 571, 186 S. W. 648, 651, Ann. Cas. 1918B, 604, we said:

"It will be seen that whether the employee accepts the act or not depends entirely upon his voluntary act. He can either accept or reject it as he pleases, and no one else has authority to do either of these things for him."

At the time he received his injuries, Kouns had not elected to accept the provisions of the act. After he was hurt, he did, and at his direction his name was signed

to the register and dated November 7, 1927. That acceptance, if valid, cannot have a retroactive effect. We have never so held. Our decisions in Junior Oil Co. v. Byrd, 204 Ky. 375, 264 S. W. 846, and Sunlight Coal Co. v. Floyd, 233 Ky. 702, 26 S. W. (2d) 530, are not to the contrary. In those cases we held that the employers by their acts and conduct had estopped themselves to deny that the employee was under the provisions of the act. Such facts do not appear here. In those cases the employers had agreed with the injured workmen and had been making them payments for their injuries. They thereby led those workmen to believe they were under the act, and we held they could not thereafter change their positions. That is not the case here. Josselson Bros. have never paid Kouns anything, or paid his attending physician anything. Josselson Bros. actively resisted the claim of Kouns before the Workmen's Compensation Board as appears from their answer filed therein, upon which no filing date is found, but which was verified March 22, 1928, and to which Kouns filed a reply and sent the attorney for Josselson Bros. a copy on April 2, 1928, less than 4½ months after the accident, and certainly he knew when Josselson testified on June 13, 1928, less than 7 months after. the accident, his claim of being under the Workmen's Compensation Act was most sharply contested.

Kouns still had more than 4 months in which to bring a common-law action for his injuries, he had notice on every hand Josselson Bros. were insisting he was not under the protection of the act, and, nothing appearing to estop Josselson Bros. from so contending, it follows the judgment of the circuit court in approving the action of the Workmen's Compensation Board is correct, and it is affirmed.